# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

**United States of America,**                             **Criminal No. 08-91 (JMR / SRN)**

        **Plaintiff,**

        **v.**                                                      **REPORT AND RECOMMENDATION**

**Terrill Doneil Smith,**

        **Defendant.**

---

    Richard Newberry, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for U.S.A.

    Manvir K. Atwal, Office of the Federal Defender, 107 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendant's dispositive motions: Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 11), and Motion to Suppress Statements Admissions and Answers (Doc. No. 12). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, this Court recommends that the motions be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant has been indicted for being a felon in possession of a firearm. (Doc. No. 1.) He now presents several dispositive as well as non-dispositive motions.[1]

On September 10, 2007, St. Paul Police Officer Darren Johnson was on routine patrol

---

[1] The Court has addressed Defendant's non-dispositive motions in an Order dated September 15, 2008.

with Officer Anderson.[2] They randomly ran a check on a license plate of a vehicle and determined the registered owner lacked a valid driver's license. Accordingly, they followed the vehicle which then turned without properly signaling. The officers stopped the vehicle and confirmed that the driver lacked a valid license. The passenger, Defendant Smith, also lacked a valid license. The owner also lacked proper proof of insurance.

The officers thus decided to have the vehicle towed to an impound lot. They removed the two occupants and told them to sit on the curb. While Officer Anderson was preparing to conduct an inventory search of the vehicle, Officer Johnson asked the occupants whether there was anything illegal in the car. Defendant stated there was a gun under the front passenger seat.

After Defendant was arrested and placed in the back seat of the officers' squad car, Officer Johnson remarked to Defendant that he appreciated his candor in disclosing the presence of the firearm. Defendant made further statements regarding the gun. Once they arrived at the police station, Defendant was given Miranda warnings and waived his rights. He then provided further statements.

## II.    DISCUSSION

### A.    Search and Seizure

Defendant first challenges the stop of the vehicle in which he was a passenger and the resulting warrantless search of that vehicle, seeking to suppress the firearm that was found under the passenger seat. (Doc. No. 11.)

Having personally observed the vehicle turn without properly signaling, the officers had a proper basis to initiate the traffic stop. E.g. United States v. Olivera-Mendez, 484 F.23d 505, 509 (8th Cir. 2007) ("[I]t is well-established that a police officer who observes a traffic violation

---

[2] Officer Johnson testified at the September 8, 2008, motions hearing in this matter.

has probable cause to stop the vehicle and its driver."); United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990) ("When an officer observes a traffic offense–however minor–he has probable cause to stop the driver of the vehicle."); see Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) (stating that "driving an automobile with expired license tags in violation" of state law presents "no question about the propriety of the initial" stop).

Moreover, where, as here, the initial stop is valid, the officer may lawfully direct the driver (and any passengers) to get out of their vehicle. Maryland v. Wilson, 519 U.S. 408, 410 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 111 & n.6 (1977). Defendant's argument that he was improperly seized is further directed, however, at the fact that the officers asked him and the driver to sit on the curb. Once an officer makes a valid traffic stop, however, the officer may direct an occupant of the vehicle to stay in the officer's squad car pending the investigation of the occupant's license and criminal record. E.g. United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994). Accordingly, simply having the occupants sit on the curb–a seemingly less restrictive form of detention than being placed in a squad car–is a procedure that imposes at most a *de minimus* seizure beyond that inherent in being stopped and removed from the vehicle, at least where, as here, the length of such detention is not greater than that necessary for a routine traffic stop. In short, no aspect of the "seizure" of Defendant here–the initial stop of the vehicle, removing him from the vehicle, and directing him to sit on the curb–was unconstitutional.

The officers then decided that because neither occupant had a valid license and the vehicle was not properly insured, they would have the vehicle towed and impounded. The Government contends that the officers were thus entitled to conduct an inventory search. Although such a search would appear to have been proper, it appears that the firearm was found not pursuant to any inventory search but rather as a result of Defendant's disclosure–in response

to Officer Johnson having asked Defendant, before the other officer began to inventory the vehicle, whether the vehicle contained anything illegal–that there was a firearm under the passenger seat.[3]

Putting aside any issue of inevitable discovery (based either on the impending inventory search or perhaps on a search incident to arrest), an argument on which the Government does not rely, the question is simply whether there was probable cause to conduct a warrantless search of the vehicle where the occupants had not (yet) been arrested.  Here, it seems clear that the officers had sufficient probable cause to believe the vehicle contained a weapon, the question becoming whether they then should have first obtained a warrant based on that information.  In Pennsylvania v. LaBron, however, the Supreme Court clarified that under the automobile exception to the Fourth Amendment's warrant requirement, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." 518 U.S. 938, 940 (1996) (rejecting view that exigent circumstances must exist).  Thus, there was nothing improper about the search here.

    **B.**    **Statements**

Defendant also moves to suppress the various statements he made following the stop of the vehicle, claiming that the first statement he made while sitting on the curb was without the benefit of counsel and thus in violation of his rights under the Fifth and Sixth Amendments, and that the second statement he made while in the squad car following his arrest was not voluntary

---

[3] There is no basis to suppress the firearm–a physical item of evidence–as a result of any alleged violation of Miranda because the Fifth Amendment, which the Miranda warnings serve to protect, only prohibits compulsory testimony.  United States v. Patane, 542 U.S. 630, 644-45 (2004) (Kennedy, J., concurring in judgment) ("Admission of nontestimonial physical fruits . . . does not run the risk of admitting into trial an accused's coerced incriminating statements against himself.").  It does not require the exclusion of nontestimonial evidence obtained as a result of voluntary statements.  Id.

and thus obtained in violation of his Fourth and Fifth Amendment rights. (Doc. No. 12.) He also challenges the statements he gave at the station following his waiver of his Miranda rights.

With respect to the first statement, Defendant contends that his response–that there was a firearm under the seat–must be suppressed because he was then subject to a custodial interrogation conducted without the benefit of any Miranda warnings. There is no basis to suppress, however, because Defendant was not in custody at that time. Although Miranda warnings had not yet been given, the officers had simply lawfully removed Defendant and the driver from the vehicle pursuant to a valid traffic stop and then instructed them to sit on the curb. The Supreme Court has held that "persons temporarily detained pursuant [to ordinary traffic stops] are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). Rather, the procedural safeguards dictated by Miranda "become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Id. Here, however, Defendant had not been arrested and was not handcuffed or otherwise physically restrained, but rather simply sitting on the curb. Nor is there any evidence that any officer had drawn his weapon. Accordingly, Defendant was not "in custody" so as to trigger the application of Miranda.

With respect to the second statement, which Defendant made while in the back of the squad car following his arrest, the Government agrees he was then in custody, but contends that he was not interrogated and gave the statement voluntarily. Defendant argues, however, that while there may have been no direct questioning, his statement was elicited by Officer Johnson's statement that he appreciated Defendant having been forthright about disclosing the gun under the passenger seat. On this record, however, the Court cannot conclude that the officers engaged in any actions that would constitute the "functional equivalent" of "express questioning" under

Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).  Absent express questions, to trigger the safeguards of Miranda warnings, an officer must employ "words or actions" that "the police should know are reasonably likely to elicit an incriminating response from the suspect."  Id. at 301.  But the "subtle compulsion" that might result from a "few off hand remarks" that are not "particularly 'evocative'" and do not amount to a "lengthy harangue" does not amount to "interrogation."  Id. at 303.  Here, Officer Johnson's expression of appreciation does not rise to the functional equivalent of direct questioning.

With respect to the final statement, there is no dispute that Defendant had been read his Miranda rights and then waived them.  Nevertheless, Defendant seeks suppression because he had been illegally detained and arrested.  But because the traffic stop was valid and Defendant's arrest was proper, there is no basis to suppress.

## III.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.   Defendant's motion to suppress evidence (Doc. No. 11)  be DENIED; and

2.   Defendant's motion to suppress statements (Doc. No. 12) be DENIED.


Dated:  September 15, 2008

   s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by September 30, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the

objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.